UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Joyce A.,[1] | ) | C/A No. 5:22-cv-4168-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| Martin O'Malley,[2] Commissioner of Social Security Administration, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's petition for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision the Commissioner of Social Security ("Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act ("the Act"). Having carefully considered the parties' submissions and the applicable law, the court affirms the decision of the Commissioner for the reasons set forth herein.

## I.    Relevant Background

### A.    Procedural History

This appeal concerns Plaintiff's April 8, 2019[3] applications for DIB and SSI benefits under Title II and Title XVI of the Act, 42 U.S.C. §§ 401-433 in which she alleges a disability

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Martin O'Malley was confirmed as Social Security Commissioner on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes Martin O'Malley for Kilolo Kijakazi as Defendant in this action.

onset date of January 26, 2019. Tr. 222-235. Plaintiff's applications were denied initially, Tr. 132-136, and upon reconsideration, Tr. 142-151, and in December 2019 Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), Tr. 162-163. Plaintiff's initial administrative hearing was held on June 3, 2020 before ALJ Linda Taylor. Tr. 33-58.[4] On June 24, 2020, ALJ Taylor issued an unfavorable decision, finding Plaintiff not disabled within the meaning of the Act. Tr. 15-26. On July1, 2020, Plaintiff, through counsel, requested review of that ALJ decision. Tr. 218-220. After granting Plaintiff's request for additional time, Tr. 7, the Appeals Council denied Plaintiff's request for review, Tr. 1-6. Plaintiff then sought judicial review of the Commissioner's decision. In a March 18, 2022 Order, the undersigned reversed and remanded the Commissioner's decision for further proceedings. Tr. 708-731; *see also* ECF No. 15 in 5:20-cv-4336-KDW. The Appeals Counsel then remanded the matter to an ALJ for further proceedings. Tr. 705. ALJ Ethan Chase conducted a second hearing on September 16, 2022, at which Plaintiff appeared with counsel and testified. Vocational expert ("VE") Jane Colvin-Roberson also testified at that hearing. Tr. 654-674. On September 28, 2022, the ALJ issued a new decision,[5] again finding that Plaintiff was not disabled between January 26, 2019 and September 28, 2022, the period at issue. Tr. 636-646. Plaintiff then brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on November 21, 2022. ECF No. 1.

---

[3] Although Plaintiff's applications are dated April 16, 2019, her protective filing date for both applications is April 8, 2019. Tr. 15.

[4] The hearing was held telephonically because the "extraordinary circumstance" of the COVID-19 pandemic made in-person hearings and video teleconferencing unavailable at the time. Tr. 15.

[5] Subsequent reference to the "ALJ" and the "Decision" are to ALJ Chase and the September 28, 2022 Decision unless otherwise noted.

**B.    Plaintiff's Background**

Born in August 1956, Plaintiff was 62 years old as of her alleged disability onset date of January 26, 2019, and 63 years old at the time of the first administrative hearing and 66 years old at the time of the second administrative hearing. Tr. 229. In her April 26, 2019, Disability Report-Adult form Plaintiff indicated that she completed high school, attended special-education classes, and had not completed specialized job training or vocational school. Tr. 254. Plaintiff indicated that her past relevant work ("PRW") included folding towels and operating machinery for a linen company, performing housekeeping in hotels, doing laundry in a nursing center, and working as a laborer for a shipping company. Tr. 254. In her Disability Report Plaintiff indicated she stopped working on January 26, 2019, because of her conditions, which she listed as breast cancer (early stage), severe arthritis, and back problems. Tr. 253. Plaintiff indicated that she was 4'8" tall, weighed 122 pounds, and her conditions caused her pain or other symptoms. *Id.* In a Disability Report-Appeal dated October 16, 2019, Plaintiff indicated her reported medical conditions had changed. Tr. 285. However, Plaintiff indicates the change occurred on January 26, 2019, which is her alleged onset date and the date she completed the original Disability Report-Adult. *Id.* She lists the following "symptoms" and "limitations" in the space provided to describe changes in her medical conditions:

> Symptoms: coughing spells; difficulty swallowing; dizziness; fatigue; frequent urination; lack of balance; lack of grip strength; lack of stamina; lightheadedness; limited range of motion; muscle spasms; numbness; pain; shortness of breath; stiffness; swelling; tightness in chest; tingling; tremors/shakiness; trouble sleeping/insomnia; weakness; headaches; vision problems; hearing problems; anxiety; depression. Limitations: Bending; kneeling; lifting; reaching; sitting; squatting; stair climbing; standing; using hands; walking; following instructions; understanding; concentration; memory loss.

Tr. 285. Plaintiff indicated she did not have any new physical or mental conditions since the time she had last told the Agency about her conditions. Tr. 285. In a second Disability Report-Appeal

dated December 31, 2019, Plaintiff indicated there had been no changes to her medical condition and there were no new physical or medical conditions to report. Tr. 294.

### C.    The Administrative Proceedings

Plaintiff's second administrative hearing was held on September 16, 2022 before ALJ Chase in Charleston, South Carolina, under Covid-19 telephonic hearing procedures. Tr. 656. Plaintiff appeared with counsel and testified; VE Colvin-Roberson also appeared and testified. *Id.* After exhibits were received into the record and Plaintiff's counsel made a brief opening statement Plaintiff was sworn in. Tr. 656-59.

### 1.    Plaintiff's Testimony

In response to questions from the ALJ Plaintiff confirmed her date of birth and education level. Tr. 659. Plaintiff indicated she was not able to work and had last worked doing housekeeping in 2019. Tr. 659. Plaintiff indicated she had worked as a housekeeper in two places: Little River Hotel and Fairfield. She worked at Fairfield for about nine months. Tr. 660. Plaintiff said she had worked as a machine operator at Carolina Linens in 2008, 2009, and 2010. Tr. 660. Plaintiff said she did different things in that job, including running towels through a machine. She said she stopped doing that job because she was diagnosed, and then treated for, breast cancer. Tr. 660. Plaintiff indicated breast cancer was "no longer an issue" for her; however, she continued to take medication for it. Tr. 660-61.

The ALJ asked Plaintiff why she did not return to work after the breast cancer was resolved. Plaintiff indicated she had "started having problems with [her] hips and arthritis and everything started setting in, in [her] back and stuff and [her] wrist[.]" Tr. 661. Plaintiff indicated she could no longer use her wrists to do things like make beds and pick up things, including sweeping and mopping. She also indicated she could no longer stand on her feet like she used to. Tr. 661. Plaintiff noted she had to stand on her feet as a machine operator. Tr. 661.

Plaintiff indicated that, at the time of the hearing, she could stand on her feet for "maybe 30 minutes or so and that's about it[]" before her hips and back would start hurting her and she would need to sit down. Tr. 661. Plaintiff said she would sit for about 30 minutes before she could get up and try to do "a little more housework, if [she did] any housework." Tr. 661-662. Plaintiff said she had to the housework herself. She noted that she lived with her two adult sons, aged 27 and 40. Tr. 662. Plaintiff indicated her 40-year-old son was "sick too." Tr. 662. Plaintiff said she was working on getting her own place. Tr. 662. When asked how much she would be able to lift, Plaintiff responded she could not lift anything with her right hand. Tr. 662. Plaintiff said she would take things with her left hand and then use both hands to lift. She estimated she could lift "two pounds maybe." Tr. 662.

When asked whether she had any other problems that would prevent her from going back to her work as a housekeeper or machine operator, Plaintiff said she did. She indicated she was unable to bend over, she could hardly reach overhead, she could not do a lot of twisting and turning, she could not bend down, and she had a lot of issues with her legs. Tr. 662-663. Plaintiff explained she had "leg syndrome," which she explained meant her legs sometimes "want to jump around[.]" Tr. 663. Plaintiff said she took medication for the leg problem. Tr. 663. Plaintiff also testified that she would get migraines "real bad," such that she would have to go into a dark room and lie down with a pillow over her head. Tr. 663. Plaintiff said she got migraines about three or four times per week. Tr. 663. Plaintiff said she took Topomax three times per day for her migraines. Tr. 663-664.

The ALJ then turned the questioning over to Plaintiff's counsel. Tr. 664. Plaintiff said she was right-handed and that she had the most trouble reaching with her right arm, although she had some trouble reaching with both arms. Tr. 664. Plaintiff gave examples of issues she had with her fingers, wrists, and hands: she had difficulty picking up a fork; she could not pick up change

on a counter without sliding it over to the counter's edge; she could not button her shirts. Tr. 664-65. Counsel noted Plaintiff had testified in 2020 that writing was a problem. Tr. 665. Plaintiff indicated she was unable to write, other than possibly write her name once. Any more causes her hand to hurt badly. Tr. 665.

Plaintiff said that, in high school, she had been in resource classes for slow learners. Tr. 665. Plaintiff said there were a lot of things she could not understand when reading. She said she sometimes had to get help with filling out doctor's office paperwork. Plaintiff indicated she could sometimes read and understand newspaper headlines, but sometimes she could not. Tr. 665.

Counsel asked Plaintiff how long she would be on her feet on a "typical" eight-hour day. Tr. 666. Plaintiff said that time would total an hour at the most. Tr. 666. When asked to describe what she would do in a day, Plaintiff said she would do a little housework—no more than an hour, but probably less. Plaintiff said sweeping and mopping "kills" her. Tr. 666. Plaintiff indicated that she would be sitting down for the majority of an eight-hour day. Tr. 666.

When asked whether there was a stimulus that would bring on her migraines, Plaintiff said there was not. She noted, "I might just go through a little bit of depression too." Tr. 667. Counsel asked Plaintiff how long she would need to lie in a dark room when she had a migraine. Plaintiff said it would take "about all day." Tr. 667. When asked about any other issues, Plaintiff noted she was too weak to go up and down stairs. Tr. 667-668. Plaintiff indicated the most amount of time she could stand without resting would be about 20 minutes. Tr. 668.

Plaintiff said she tried to walk down her road, which was not quite a quarter of a mile. She said it took her 10 minutes to walk down it and back. Tr. 669. After she did that walk she would feel exhausted and need to rest about 20 minutes before trying to do anything else. Tr. 669.

When asked if there were any issues that had not been discussed, Plaintiff said her feet and ankles were bothering her. Tr. 670 (providing no explanation of those issues other than she has pain in those joints and they "bother" her a little bit).

Counsel had no further questions.

### 2.    VE Testimony

Without objection from Plaintiff's counsel, the ALJ qualified Jane Colvin-Roberson, VE, as an expert. Tr. 670-71. VE Colvin-Roberson identified Plaintiff's past relevant work (PRW) as a linen operator as being described as a folding machine operator in the <u>Dictionary of Occupational Titles</u> ("DOT"). Tr. 671. The folding machine operator position has a DOT code of #369.686-010, SVP 2, unskilled. That position was at the light exertion level generally and as performed by Plaintiff. Tr. 671. The housekeeping position has a DOT code of #323.687-014, SVP 2, unskilled. The general classification is as light work; based on Plaintiff's indicating she lifted up to 25 pounds, the job was at the lower end of medium exertion as performed. Tr. 671.

The ALJ then asked the VE the following hypothetical:

> Please assume an individual of the claimant's same age, education and work experience who is limited to light work with occasional postural, occasional overhead reaching, frequent handling, avoid concentrated exposure to hazards and heights, extreme cold and vibration. Would that person be able to do any of the claimant's past work as either actually or generally performed?

Tr. 671. The VE explained that the job of folding machine operator would fit within the parameters of the hypothetical both as generally and actually performed. The housekeeping job would fit only as generally performed. Tr. 671. The VE explained that the DOT does not address overhead reaching, and the response to that part of the hypothetical is based on the VE's professional experience and understanding. Tr. 672.

Plaintiff's counsel then asked whether all PRW would be eliminated for the individual identified in the hypothetical if that individual were also limited to four hours or less of standing.

Tr. 672. The VE indicated all PRW would be eliminated. Counsel then asked whether that person's PRW would be eliminated if the person had less than occasional use of their right-dominant hand. The VE indicated all PRW would be eliminated. Tr. 672.

Plaintiff's counsel asked whether the linen operating machine job would basically include just standing in place without much postural movement. The VE responded in the affirmative. Tr. 672. Counsel then asked about the postural movement involved in the housekeeping job. Tr. 672-73. The VE explained the limitation to "occasional" postural movement was defined by the DOT as movement taking up to one-third of an eight-hour workday. Tr. 673. Counsel then asked if postural movement were limited to "less than occasional" whether the housekeeping job would be eliminated. The VE indicated it would. Tr. 673.

There being no further questions the hearing was closed. Tr. 673.

## II.    Discussion

### A.    The ALJ's Findings

In his September 28, 2022 decision, the ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through September 30, 2022.

2.    The claimant has not engaged in substantial gainful activity since January 26, 2019, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3.    The claimant has the following severe combination of impairments: osteoarthritis and degenerative disc disease of the cervical and lumbar spine (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally do postural activities. The claimant can occasionally reach overhead and frequently handle. The claimant must avoid concentrated exposure to hazards, heights, extreme cold, and vibration.

6.    The claimant is capable of performing past relevant work as a housekeeper and folding machine operator. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.    The claimant has not been under a disability, as defined in the Social Security Act, from January 26, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 639, 640, 642, 645, 646.

**B.    Legal Framework**

**1.    The Commissioner's Determination-of-Disability Process**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims).  An examiner must consider the following:  (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the

Listings;[6] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520, § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b), § 416.920 (a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing the inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the

---

[6] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii), § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526, § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146 n.5 (regarding burdens of proof).

### 2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that the Commissioner's conclusion is rational. *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v.*

*Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

### III.    Analysis

Plaintiff alleges the ALJ erred by (1) failing to evaluate her subjective complaints properly and failing to provide support for the assessed RFC in a manner that accounted for all of Plaintiff's functional-related limitations; and (2) failing to properly consider the opinion of evaluating physician Morton Meltzer, M.D. Pl. Br., ECF No. 15. The Commissioner argues that substantial evidence supports the ALJ's determination. Def. Br., ECF No. 17. The court will discuss each argument in turn, consolidating the analyses of related arguments where appropriate.

### A.    Allegations regarding the ALJ's RFC assessment

Plaintiff's first allegation of error relates to the ALJ's RFC assessment, including his handling of her subjective complaints. The ALJ found Plaintiff had the RFC to perform jobs at the light exertional level with the following limitations: occasional postural activities; occasional overhead reaching; frequent handling; and avoidance of concentrated exposure to hazards, heights, extreme cold, and vibration. Tr. 642. Plaintiff submits this RFC required that the ALJ "explicitly reject [Plaintiff's] contentions that she was extremely limited in the amount of time she can stand and walk at one time, as well as, how long, in the aggregate, she could stand over an eight hour time period." Pl. Br. 15. Plaintiff particularly argues the ALJ erroneously considered her failure to receive certain types of medical attention, improperly discounted her subjective complaints and failed to undertake a function-by-function analysis of her RFC. Pl. Mem. 15-25. Ultimately, Plaintiff argues that a "fair RFC assessment would have limited [her] to sedentary work with restrictions for the use of her dominant right wrist and hand." Pl. Br. 24.

Such an RFC, she notes, would lead to a finding that Plaintiff was disabled based on the Medical-Vocational Guidelines (the "Grids"). *Id.*

The Commissioner submits Plaintiff's RFC is supported by substantial evidence, noting the ALJ's discussion of medical records, Plaintiff's testimony, and Plaintiff's conservative treatment in evaluating what Plaintiff would be able to do. Def. Br. 12-27.

### 1.    The ALJ's findings

The ALJ notes Plaintiff's case is before him on remand from the court with instructions from the Appeals Council that he "consider the additional impact that [Plaintiff's] allegation of lumbar degenerative disc disease [DDD] has on [her RFC]." Tr. 636. The ALJ found Plaintiff had the severe impairments of osteoarthritis and DDD of the cervical and lumbar spine; and the non-severe impairments of "migraine headaches, gastroesophageal reflux disease, restless leg syndrome, hypothyroidism, status post lumpectomy of right breast ductal carcinoma with radiation completed in April 2019." Tr. 639. The ALJ found there was no evidence of ongoing functional limitations from the non-severe impairments. *Id.* The ALJ also evaluated Plaintiff's medically determinable impairments of depression and anxiety and found them to cause no more than minimal limitations, making them non-severe. *Id.*; *see also id.* at 639-40 (evaluating Plaintiff's mental impairments, including the testimony of state agency psychological consultants and the psychological consultative examination performed by Dr. Meltzer[7], and determining Plaintiff's mental impairments did not meet or medically equal a listed impairment). The ALJ also found Plaintiff's other impairments did not meet or medically equal a listed impairment. Tr. 640-41. Plaintiff has not specifically challenged these findings.

---

[7] Dr. Meltzer's examination report is discussed further below.

The ALJ set out Plaintiff's RFC of being able to perform light work[8] except Plaintiff could occasionally do postural activities and reach overhead; she could frequently handle; she was to avoid concentrated exposure to hazards, heights, extreme cold, and vibration. Tr. 642. The ALJ did not adopt any mental limitation.

2.    **Plaintiff's allegations regarding analysis of subjective complaints**

Much of Plaintiff's appeal of the ALJ's decision focuses on the ALJ's evaluation of her subjective complaints under the Commissioner's regulations and Social Security Ruling (SSR) 16-3p. Pl. Mem. 15-21.

SSR 16-3p provides a two-step process for evaluating an individual's symptoms. First, the ALJ must determine whether the individual has a medically determinable impairment "that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p, 2017 WL 5180304, at *3. In the second step the ALJ must "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities . . . ." *Id.* at *4. "In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id. See also* 20 C.F.R. § 404.1529, § 416.929 (noting the ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence).

---

[8] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b), § 416.967(b).

a.     **The ALJ's reasoning and decision as to subjective complaints**

Here, after setting out Plaintiff's RFC to perform light work with additional limitations, the ALJ indicated that, in making his finding, he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the relevant medical evidence and other evidence based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p." Tr. 642. He further noted he had considered medical opinions and prior administrative findings as required by 20 C.F.R. § 404.1520c & § 416.920c. *Id.*

To that end, the ALJ spent several pages discussing Plaintiff's medical records, subjective complaints, and activities of daily living ("ADLs"). Tr. 642-645. The ALJ first summarized Plaintiff's testimony from her earlier hearing as follows:

> In June 2020, at the initial hearing, the claimant testified that she lives with her adult son. She has a driver's license, and she drives once or twice a day to the store or to the doctor. She stopped working on January 26, 2019. She believes she is disabled because she is not able to stand for long periods, and because her back and hips hurt. She can stand for 30-60 minutes. She cannot sweep or mop the floor. Sometimes she lies down during the day. Her back and hips hurt when she is walking or climbing stairs. She has not had any treatment for her back or hips. She is not taking pain medications. She takes medications for arthritis, seizure medicine, thyroid medicine, cancer medication, and medication for anxiety. Her medications control her symptoms "pretty good." However, she needs a higher dosage of arthritis medication and medication for restless leg syndrome, as the current dosages are not controlling her symptoms. The claimant denied medication side effects. She has not participated in physical therapy. She tries to walk once or twice a week for five to 10 minutes.
>
> [S]he testified she broke her right wrist years ago and had surgery. She currently has arthritis in her hand and wrist. She tries to keep moving her wrist, so it stays flexible. She cannot write her name with her right hand. She is right-handed. The claimant has been taking Meloxicam for four to five months. She spends most of her day in bed. She watches television. She tries to sweep and mop, but her back hurts. Washing dishes is painful. She does not cook often, but she can fix herself something to eat during the day. She can clean up after herself in the kitchen. The claimant does small loads of laundry. The claimant goes shopping with sister. Functionally, the claimant stated that she can walk for 30-minutes, stand for 30-60 minutes, and sit for 30-minutes.

Tr. 642-43. The ALJ then summarized Plaintiff's testimony at the September 2022 hearing on

remand, noting the following:

- Plaintiff testified her "hips, wrist, and back pain prevent her from returning to her past work as a housekeeper."
- Plaintiff said she had difficulty using her hands.
- Plaintiff indicated she could only stand 30 minutes and could only lift up to two pounds.
- Plaintiff said she could not bend, twist, or turn; she also indicated she could not reach overhead or pick up change or use her right hand to write.
- Plaintiff indicated she had "leg syndrome" that caused her legs to hurt and jump.
- Plaintiff said she had migraine headaches "three to four times a week."
- Plaintiff "lives with two adult children, but [she] does the housework herself."

Tr. 643.[9]

The ALJ then found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 643.

The ALJ then considered Plaintiff's treatment history, noting Plaintiff had "sought treatment for her impairments," and had been "prescribed medications such as Mobic, Gabapentin, and Cyclobenzaprine by her primary care provider at Little River Medical Center [LRMC]." Tr. 643 (citing ex. 17F/20, found at Tr. 959). The ALJ continued:

> However, [Plaintiff] has not been seen in the emergency room for acute pain since her alleged onset date. She has not attended physical therapy. She has not received injections for pain-relief. Surgery has not been recommended. She has not seen any specialists, such as orthopedist physician, rheumatologist, or pain management specialist. She has not been observed to use an assistive device to aid in ambulation. She is not observed to use braces or other pain-relieving garments.

Tr. 643.

---

[9] *See also* Tr. 644 (as discussed below; contains further discussion of Plaintiff's subjective complaints and ADLs).

**b.    The ALJ's alleged failure to improperly consider Plaintiff's lack of resources**

Plaintiff contends that the ALJ erroneously failed to consider whether Plaintiff had the financial resources to afford additional treatment when he analyzed Plaintiff's treatment history. Pl. Mem. 16-17 (referencing Tr. 643). Plaintiff indicates she had testified that she "lacked both monetary means and insurance for any additional medical care beyond seeking medication prescriptions at [LRMC]." Pl. Mem. 16. Plaintiff does not point to where this testimony is found in the record; the court notes that Plaintiff testified at the first hearing that she did not have money or insurance to pursue treatment. Tr. 40.

The Commissioner's regulations instruct an ALJ to evaluate a claimant's symptoms by considering, among other things, medications the claimant "take[s] or have taken to alleviate [her] pain or other symptoms," and "[t]reatment, other than medication, [she] receive[s] or have received for relief of [her] pain or other symptoms." 20 C.F.R. § 404.1529(c)(3)(iv), (v); § 416.929(c)(3)(iv), (v). As pointed out by Plaintiff, an ALJ is required to consider a claimant's ability to receive treatment in evaluating medical history. Pl. Mem. 17 (citing SSR 16-3p, 2017 WL 5180304, at *9-10). Plaintiff notes her testimony that she lacked monetary means and insurance to pursue additional treatment beyond that at LRMC and ascribes error to the ALJ's discussion of her failure to obtain further treatment. Pl. Mem. 16-17.

The court finds no error, however. As pointed out by the Commissioner, in addition to requiring an ALJ to consider a claimant's inability to obtain treatment when considering the treatment history, SSR 16-3p further provides that, in evaluating the reasons for failing to seek treatment, an ALJ should recognize that "an individual may not be able to afford treatment *and may not have access to free or low-cost medical services*." SSR 16-3p, 2017 WL 5180304, at *10 (emphasis added). Def. Mem. 16. LRMC offers low-cost medical care to those who qualify, including those without insurance. *See* https://www.lrmcenter.com (last viewed March 11, 2024).

As Plaintiff went to LRMC regularly for various issues and for medication refills and x-rays, there is evidence that she had access to care.

In addition, irrespective of whether Plaintiff *received* additional treatment the ALJ appropriately considered whether doctors had indicated additional treatment was warranted or recommended. Tr. 643 (finding Plaintiff's allegations regarding her symptoms only partially supported, noting, *inter alia*, no surgery had been recommended). *See, e.g., Williamson v. Berryhill*, No. 8:16-cv-2915-TMC-JDA, 2018 WL 3133417, at *11 (D.S.C. Jan. 30, 2018), *report and recommendation adopted,* 2018 WL 1166097 (Mar. 6, 2018) (finding ALJ's subjective-complaint evaluation appropriately considered that surgery had not been recommended for spinal impairment).

Furthermore, the court agrees with the Commissioner that, even if the ALJ's consideration of Plaintiff's limited treatment history was erroneous, such error is harmless. As discussed above, Plaintiff's lack of certain treatments was but one of the reasons the ALJ determined Plaintiff's subjective complaints were not entirely consistent with the record evidence as a whole. Tr. 642-45. *King v. Colvin*, Civ. A. No. 6:12-3043-TMC, 2014 WL 906795, at *2 (D.S.C. Mar. 7, 2014) (acknowledging ALJ erred in failing to consider Plaintiff's inability to afford care, but finding such error was harmless because the "failure to seek further medical treatment was one factor the ALJ considered, but not the only factor or even the deciding factor").

### c.    The ALJ's consideration of Plaintiff's ADLs

Plaintiff also ascribes error to the ALJ's consideration of her subjective complaints. She argues the ALJ offered only a "boiler plate" finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 643; *see* Pl. Mem. 19. The court

disagrees. Rather, in addition to detailing Plaintiff's subjective complaints (*see* Tr. 642-43), the

ALJ also considered the objective medical evidence (*see* Tr. 643-45). 20 C.F.R. §

404.1529(c)(2), § 416.929(c)(2). Citing to medical records, the ALJ summarized Plaintiff's

relevant medical history as follows:

- Related to movement and motion:
  - Plaintiff's examinations revealed cervical and lumbar spine tenderness; reduced range of motion in shoulders; tenderness to palpation of the calf and posterior knees; and a decreased range of motion of the knees (citing exs. 7F/8; 8F/7; 13F/14, 21).
  - Plaintiff's examinations revealed: normal gait, normal strength of upper and lower extremities bilaterally; normal bilateral grip strength; normal range of motion of spine and extremities; negative straight leg raise test; the ability to get on and off of the exam table unassisted; a normal ability to rise from a seated position; negative Romberg and Babinski testing;[10] normal sensation; normal reflexes, and normal coordination (citing exs. 7F/8; 8F/6; 13F/14, 21, 24; 14F/4, 9, 13; 16F/9; 17F/1, 4, 11, 28, 33, 37, 40, 44, 47, 51, 55, 58).[11]

---

[10] The Romberg test measures a person's sense of balance. https://www.physio-pedia.com/Romberg_Test (last viewed March 11, 2024). The Babinski reflex refers to a test to check for neurological health. https://www.medicalnewstoday.com/articles/babinski-reflex#definition (last viewed March 11, 2024).

[11] Exhibit 7F comprises May and June 2019 records from LRMC. Page 8 of exhibit 7F is from a July 26, 2019 examination at which Plaintiff's physical findings indicated normal general appearance of both shoulders with no pain on shoulder movement, although shoulder motion was "abnormal"; cervical spine was normal with no weakness; in considering the lumbar spine it was noted that straight-leg-raising test was negative. Tr. 496 (same notes found at ex. 13F/21 (Tr. 579). Exhibit 8F/6 and /7, which are a part of an evaluation by Jadene Young, M.D., indicate Plaintiff had good grip strength, negative Romberg, and negative Babinski. Tr. 504. Further, Dr. Lowry noted "[n]o gross deformities" in the musculoskeletal examination. She noted tenderness to palpation of the calf, posterior knees, and lower lumbar spine, with a decreased range of motion in the knees and spine. Tr. 505. Plaintiff had a steady gait with no assistive devices used, she was able to bend the knees while holding on, and she could get on and off of the exam table without aid and was able to rise from a seated position. Tr. 505. Treatment notes from an April 2, 2019 visit to LRMC indicated Plaintiff's cervical spine exhibited lordosis and tenderness on palpation but no muscle spasm. The motion of the cervical spine was normal, and pain was not elicited by movement of the cervical spine. Tr. 572 (ex. 13F/14). When Plaintiff went to LMRC on July 26, 2019, she complained of her legs jumping. Tr. 581. She was assessed with restless leg syndrome and placed on gabapentin. Tr. 584. On examination, Plaintiff's musculoskeletal system was "normal" and no lower leg abnormalities were seen. Tr. 582 (ex. 13F/24). November 18, 2019 notes from LRMC also indicated that, on examination, Plaintiff's musculoskeletal system was "normal." Tr. 607 (ex. 14F/4). Plaintiff went to LRMC on April 7, 2020 with complaints of pain in lower back, shoulders, and hips. Tr. 612 (ex. 14F/9). Plaintiff's

- X-rays:
  - April 2019 cervical radiographs showed mild degenerative disc disease changes, moderate facet arthrosis, and unconvertible apophysis spondylosis (citing ex. 13F/9; the court notes this information is found at Tr. 468 (ex. 4F/64).
  - July 2019 lumbar spine x-rays showed spondylosis without bone lesion or fracture (citing ex. 9F/7). (Tr. 513).
  - An April 2020 left shoulder x-ray showed moderate degenerative change in the right acromioclavicular (ACL) joint and no acute bony abnormality (citing ex. 14F/27). Tr. 630.
  - An April 2020 lumbar spine x-ray showed "mild irregularity of the superior and inferior endplates of the L1 vertebral body, mild irregularity of the superior endplate of the L2 vertebral body, and mild intervertebral disc space at the L5-S1 level (citing ex. 14F/29). Tr. 632.

Tr. 643-44.

The ALJ then determined, "while the claimant's impairments with symptoms, which are likely exacerbated by strenuous and heavy demands, the evidence, as supported by objective findings and demonstrated functional abilities, do not negate the ability for light work demands with occasional postural activities, occasional overhead reaching and frequent handling." Tr.

---

musculoskeletal system examination revealed a full range of motion in the back and bilateral shoulders. A lumbar spine x-ray was ordered for April 2020. *Id.* At her February 18, 2020 visit to LRMC Plaintiff noted she had no insurance and could not afford medication. She had applied for assistance. Examination of her musculoskeletal system indicated a full range of motion. Tr. 616 (ex. 14F/13). At her LMRC return visit of March 10, 2022, Plaintiff's complaints related to GERD and cellulitis. Her musculoskeletal examination indicated normal results with a full range of motion. Tr. 937 (ex. 16F/9). LMRC records from December 9, 2021, January 31, 2022, and March 1, 2022, January 31, 2022, and December 9, 2021 indicated Plaintiff had a full range of motion and did not discuss any musculoskeletal complaints. Tr. 940, 943, 950 (ex. 17F/1, 4, 11). On May 26, 2021, Plaintiff visited LRMC in follow-up concerning hip pain. Examination notes indicated a normal gait, no effusion, swelling, or tenderness. Other than pain with abduction, Plaintiff had a full range of motion without pain with flexion and extension. Tr. 967 (ex. 17F/28). February 8, 2021 LMRC notes indicate Plaintiff had complaints of arthritis and back spasms; her extremities indicated no edema and her peripheral pulses were 2+ throughout. Tr. 972 (ex. 17F/33). Plaintiff's December 4, 2020 LMRC visit indicated no complaints or discussion related to her musculoskeletal system. Tr. 976 (ex. 17F/37). Similarly, Plaintiff's August 31, 2020 LMRC visit did not discuss musculoskeletal issues and indicated Plaintiff had full range of motion with no swelling or deformity. Tr. 979 (ex. 17F/40). *See also* Tr. 983 (ex. 17F/44, August 17, 2020 visit; same); Tr. 986 (ex. 17F/47, July 29, 2020 visit; same); Tr. 990 (ex. 17F/51, May 18, 2020 visit; same); Tr. 994 (ex. 17F/55, May 7, 2020 visit; same); and Tr. 997 (Tr. 17F/58, May 4, 2020 visit; same).

644. The ALJ added that, because of Plaintiff's complaints about pain radiating into her legs, the

RFC includes a restriction from "work hazards, heights, and vibration." Tr. 644.

In support of his RFC finding the ALJ then spent more than half of a single-spaced page

explaining how he had determined there were inconsistencies in her statements concerning the

"intensity, persistence, and limiting effects of her symptoms[.]" Tr. 644. For example:

- The ALJ contrasted Plaintiff's complaints of difficulty reaching overhead, using her right hand for grasping, and leg-radiating pain that causes "issues with prolonged walking, standing stair-climbing, and sitting" with her testimony of her ADLs. Tr. 644 (noting Plaintiff's testimony and notes in 3E, 6F, 8F that she lives, takes medications, and tends to her personal hygiene independently, cares for her dog, cooks, pays bills, drives, cleans, washes dishes, shops in stores, does laundry, watches television, goes out to eat, visits with friends, and reads).
- The ALJ noted that medical records from May 2020 through May 2022 did not include complaints of spine pain, shoulder pain, wrist/hand pain, knee pain, lack of grip strength, difficulty using her hands or arms, muscle weakness, or difficulty with walking sitting or standing. Tr. 644.
    - The ALJ noted Plaintiff did complain of back pain in August 2020 when she went to LMRC after two recent falls. Tr. 655; see Tr. 982-84 (Aug. 17, 2020 visit to LRMC for medication refills and noting back pain due to having fallen in the yard the previous week). As noted by the ALJ, at the August 2020 examination Plaintiff was found to be in no acute distress and had full range of musculoskeletal motion without swelling, deformity, or edema. Tr. 983. As noted by the ALJ, Plaintiff's medications of Cyclobenzaprine and Mobic were refilled; she was to return in three months for medication refills.
    - The ALJ also noted Plaintiff's April 2021 visit to LRMC at which she complained of right hip pain that she had experienced for months. Tr. 655; see Tr. 967. Plaintiff complained that she could not climb up and down steps, with pain worse on the incline. She noted her medication (Flexeril) seems to ease the pain. Tr. 967. As the ALJ noted, however, at this appointment, Plaintiff made no claim of pain or difficulty walking, standing, sitting, ending, reaching, or grasping/gripping items. Tr. 644. On examination, Plaintiff was assessed as having a normal gait, no effusion, swelling, or tenderness. Other than pain with abduction, Plaintiff had a full range of motion without pain with flexion and extension. Tr. 967. Plaintiff was to follow-up with an x-ray in three months. Tr. 969. As noted by the ALJ, however, the record includes no follow-up by Plaintiff as to the x-ray or any further complaints of hip pain. Tr. 644.

The ALJ found the severity of Plaintiff's alleged limitations were called into question by her

"intermittent complaints of spine and joint pain, her intermittent and conservative treatment, the

mild objective findings, consistent exam findings of normal gait, strength throughout and sensation, and her activities of daily living." Tr. 644-45.[12]

Plaintiff's challenge to the ALJ's reliance on her ADLs, Pl. Mem. 20-21, is unavailing. As an initial matter, Plaintiff's brief seems to focus on the consideration of Plaintiff's ADLs as set out in the *first* ALJ decision. Pl. Mem. 20 (quoting Tr. 23, which is part of the earlier ALJ's decision). In that earlier decision, the ALJ characterized Plaintiff's ADLs as "representative of a fairly active lifestyle and are not indicative of significant restriction of activities or constriction of interests." Tr. 23. Of course it is now the second (September 2022) decision under review. Contrary to Plaintiff's suggestion, here the ALJ did more than provide a "mere listing" of Plaintiff's ADLs as evidence that she was capable of the RFC assigned. Pl. Mem. 20.[13]

Rather, the ALJ followed applicable regulations in determining Plaintiff's RFC. As detailed above, the ALJ spent several pages discussing Plaintiff's medical history and her ADLs, explaining how the evidence of daily activities impacted his evaluation Plaintiff's subjective statements regarding her limitations. Tr. 644. The ALJ did not look to Plaintiff's ADLs as evidence that she could perform full time work. The Commissioner's regulations specifically instruct that a claimant's daily activities are a relevant factor when an ALJ evaluates the intensity and persistence of pain or other symptoms and its impact on a claimant's ability to work. 20 C.F.R. § 404.1529(c)(3)(i), § 416.929(c)(3)(i). As such, an ALJ is permitted to consider a claimant's daily activities "not as examples of the functions [the claimant] could perform for an

---

[12] The ALJ also discussed the findings of state agency medical consultants, which he found to be "generally persuasive," although he ascribed further limitations to Plaintiff's RFC than had the medical consultants. Tr. 645; *see also* Tr. 640 (discussing the opinion of consultative psychological examination by Dr. Morton Meltzer, finding it unpersuasive as it was not consistent with or supported by the totality of the evidence). The ALJ's consideration of Dr. Meltzer's examination is further discussed below.

[13] The cases from other circuits cited by Plaintiff, *see* Pl. Mem. 20, need not be closely considered herein.

entire day" but rather to evaluate the veracity of her reported symptoms. *Ladda v. Berryhill*, 749 F. App'x 166, 173 n.4 (4th Cir. 2018) (affirming Commissioner's decision, noting ALJ had cited daily activities "for purposes of the credibility determination and not as examples of the functions [claimant] could perform for an entire day"). The ALJ here did just as the regulations require, citing those activities as evidence that was inconsistent with the extent of Plaintiff's reported symptoms. Tr. 644.

That Plaintiff takes issue with the ALJ's determination does not change this result. The ALJ reasonably determined that activities such as caring for a pet, doing chores, driving, shopping, going out to eat, and visiting with friends were activities that were somewhat inconsistent with Plaintiff's reports of pain and other symptoms. Tr. 644 (citing Tr. 262-272, 484-488, 500-506); Tr. 643 (discussing hearing testimony). Substantial evidence supports the ALJ's consideration of Plaintiff's subjective complaints, including her activities of daily living.

### d.    The ALJ consideration of Plaintiff's exertional limitations.

Plaintiff also challenges the ALJ's decision claiming the RFC did not account for her functional limitations, particularly her complaints about being unable to stand for prolonged periods, difficulties climbing stairs, and her limits on the use of her right upper extremity. Pl. Mem. 21-25.[14] The Commissioner submits the ALJ appropriately considered Plaintiff's functional abilities and explained how he arrived at the RFC. Def. Mem. 19-27. The court agrees with the Commissioner.

In assessing a claimant's RFC, the Commissioner is determining the claimant's ability to perform sustained work-related activities on a regular and continuing basis. SSR 96-8p, 1996 WL 374184 at *1. Importantly, "RFC is not the *least* an individual can do despite his or her

---

[14] Plaintiff's brief once again cites to the first hearing. Pl. Mem. 22 (citing Tr. 39-44, 47-48, which are found in the transcript of the June 2020 hearing).

limitations or restrictions, but the *most*." *Id.* (emphasis in original). At the administrative hearing level, the ALJ is responsible for assessing a claimant's RFC. 20 C.F.R. § 404.1546, § 416.946. An ALJ's RFC assessment should be based on all relevant evidence and will consider the claimant's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 404.1545(a)(3) and (4), § 416.945(a)(3) and (4). Social Security Ruling 96-8p requires that the RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184 at *7. The ALJ must discuss the claimant's ability to "perform sustained work activities in an ordinary work setting" on a regular work schedule. *Id.* Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.* The RFC analysis is to include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts such as laboratory findings and non-medical evidence like daily activities and observations. *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015). The narrative discussion need not be extensive. While a reader cannot be "left to guess about how the ALJ arrived at his conclusions," *id.* at 637, "[m]eaningful review is frustrated—and remand necessary—only where we are unable to fathom the rationale in relation to evidence in the record." *Britt v. Saul*, 860 F. App'x 256, 262 (4th Cir. 2021) (quote and alterations omitted); *see also Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (noting an ALJ must provide a narrative discussion to support his conclusion, and "meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion"). Even if an ALJ does not perform a function-by-function assessment, remand is unnecessary when the ALJ "sufficiently explain[s] his conclusions" and "use[s] evidence from the record to explain" the RFC finding. *Ladda*, 749 F. App'x at 172.

As noted by the ALJ, on remand he was directed "to consider the additional impact that [Plaintiff's] allegation of lumbar degenerative disc disease has on [her RFC]." Tr. 636. The court finds the ALJ appropriately followed instructions, acknowledging Plaintiff's alleged limitations, and reasonably finding the evidence warranted significant RFC limitations—specifically as to her ability to stand, walk, and use her right hand. Tr. 642-45. While Plaintiff is dissatisfied with the findings, her arguments that the ALJ's findings are not in accordance with applicable law and are not supported by substantial evidence are unavailing.

Plaintiff's arguments related to her RFC focus on her exertional/manipulative limitations and her complaints of migraine headaches. The court considers these in turn.[15]

### i.    Exertional and manipulative limitations

Plaintiff argues the ALJ should have limited her to sedentary (rather than light) exertion work due to her difficulties standing/walking, and should have included additional RFC limitations on climbing stairs and using her right hand. Pl. Mem. 21-22. However, the court finds the ALJ appropriately evaluated these functions. The RFC is supported by substantial evidence. As detailed above, the ALJ recognized Plaintiff's testimony at both hearings, including her testimony that she could stand for "30-60 minutes" (first hearing) or for "30 minutes" (second hearing) and that her back and hips hurt when she is walking or climbing stairs. Tr. 642-643. The ALJ also specifically acknowledged that Plaintiff's "has complained of symptoms such as difficulty reaching overhead, using her right hand/wrist for grasping items, radiating lumbar pain down her legs, which causes issues with prolonged walking, standing, stair-climbing and sitting, and fatigue." Tr. 643.

---

[15] Plaintiff briefly references cognitive impairment in this section of her brief. Pl. Mem. 23-24. The court considers such claimed limitations in connection with Dr. Meltzer's report, *supra*.

The ALJ then analyzed that testimony against the rest of the record, specifically as it relates to those functions. The ALJ noted Plaintiff had sought treatment and had been taking various prescription medications for her impairments. As discussed above, the ALJ also found the other record evidence did not support her alleged symptoms. The ALJ pointed out that Plaintiff's treatment was conservative and limited despite her complaints—surgery had not been recommended, she had not seen a specialist, not had injections, or gone to physical therapy. Tr. 643.

The ALJ also examined Plaintiff's medical evidence in detail, indicating her "exam findings fail to establish gross and/or marked physical deficits." Tr. 643. As also detailed above, the ALJ supported this determination with details of medical evidence that were inconsistent with Plaintiff's reports. Tr. 643-644. For example, inconsistent with Plaintiff's claims of difficulties walking, standing, or climbing stairs, examination records revealed Plaintiff had a normal gait, normal range of motion, normal strength in all extremities, ability to rise from a seated position without difficulty, normal sensation, normal reflexes, and normal coordination. *Id.* (citing records, including, for example, Tr. 496, 572, 579, 607, 616, 937, 940, 950, 972, 979, 986, 994, 997).[16] The ALJ also noted Plaintiff had normal grip strength in both hands, which would be somewhat inconsistent with her proclaimed difficulties using her right hand. Tr. 643-644 (citing, *e.g.*, Tr. 504 (ex. 8F/6)). The ALJ then discussed Plaintiff's diagnostic imaging evidence (such as x-rays), finding that evidence generally showed mild abnormalities, rather than more significant abnormalities that one might expect to see in light of the symptoms Plaintiff reported. *See* Tr. 644 (discussing various x-rays, as detailed above).

After discussing Plaintiff's examination findings the ALJ concluded that, "while [Plaintiff's] impairments with symptoms, which are likely exacerbated by strenuous and heavy

---

[16] *See* n.11, *infra*.

demands," the evidence did not negate Plaintiff's ability to perform "light work demands with occasional postural activities, occasional overhead reaching and frequent handling." Tr. 644. Out an "abundance of caution," the ALJ took into account Plaintiff's complaints about pain radiating into her legs and included in her RFC a restriction from "work hazards, heights, and vibration." Tr. 644. Additionally, as also discussed more fully above in considering the analysis of Plaintiff's subjective complaints, the ALJ noted that Plaintiff did not consistently report symptoms related to her ability to walk, stand, sit, climb stairs and perform other related functions between 2020 and 2022. *See* Tr. 644 (discussing Plaintiff's ADLs as being inconsistent with her claimed limitations).

Finally, the ALJ also supported his RFC finding regarding Plaintiff's ability to stand, walk, sit, climb stairs, and use her right hand with the prior administrative medical findings by two state agency doctors, which the ALJ found "generally persuasive." Tr. 645. The ALJ noted the consulting doctors had determined Plaintiff could perform at the medium exertion range with certain postural limitations (including frequent handling and occasional overhead reaching with the right upper extremity; occasional climbing of ladders, ropes, and scaffolds; occasional stooping; frequently performing other postural activities; and avoidance of concentrated exposure to extreme cold, vibration, and hazards. *Id.* (citing exs. 1A and 6A: ex. 1A, found at Tr. 60-74, is the August 27, 2019 evaluation of Dakota Cox, M.D.; ex. 6A, found at 109-125, is the December 6, 2019 reconsideration evaluation of Howard Horsley, M.D.). The ALJ explained that these prior administrative medical findings were "supported by a detailed narrative and specific cites to the record," which "shows mild degenerative disc disease and moderate shoulder degenerative changes, with generally exam findings of normal gait, good strength throughout, including grip strength, and normal sensation." Tr. 645. In any event, the ALJ determined greater limitations were appropriate "based upon the claimant's pain complaints[.]" Tr. 645. To that end,

the ALJ determined that to be "prudent" the RFC he assigned "further limited [Plaintiff] to the above light exertional range with occasional postural limitations, occasional overhead reaching and frequent handling." Tr. 645.

In sum, the court finds the ALJ's detailed discussion of Plaintiff's medical records in conjunction with her complaints and other reports of record and the RFC he found for Plaintiff is well-supported. The ALJ's findings as to Plaintiff's RFC, including her postural abilities and abilities concerning the use of her right upper extremity, are supported by substantial evidence.

### ii.     Migraine headaches

Plaintiff also briefly argues that the ALJ should have found RFC limitations to address her migraine headaches. Pl. Mem. 23 (looking to Plaintiff's testimony and citing Tr. 414, 425, 441, 495 as evidence of Plaintiff's "documented medical condition"). As an initial matter, to the extent these cited pages reference migraines at all they only indicate migraines as a "past diagnosis" and/or indicate Plaintiff takes Topiramate for migraine prevention. Tr. 414 (blank page; the following page from a January 17, 2018 visit to LRMC lists Topiramate as a medication taken for migraine prevention and lists migraine headache under past diagnoses but includes no discussion of current complaints of migraine); 425 (record from March 30, 2018 visit to LRMC lists Topiramate as a medication taken for migraine prevention and lists migraine headache under past diagnoses but includes no discussion of current complaints of migraine); 441 (same as to notes from October 10, 2018 visit to LRMC); 495 (same as to notes from June 26, 2019 LRMC visit).

The court agrees with the Commissioner that the ALJ appropriately analyzed the evidence and reasonably determined that Plaintiff's migraine headaches did not warrant additional RFC limitations. The ALJ addressed Plaintiff's migraine headaches at Step Two, finding migraine headaches to be a nonsevere impairment because "there is no evidence of any

ongoing functional limitations from this impairment due to the limited nature of the complaints, the good response to treatment, or the lack of any evidence of any functional limitations for any 12-month period." Tr. 639.

While Plaintiff did not specifically challenge the ALJ's finding her migraine headache to constitute a nonsevere impairment, the court notes the ALJ's determination in that regard is supported by substantial evidence. A nonsevere impairment is "a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities." SSR 96-3p, 1996 WL 374181, at *1. An impairment is nonsevere if it is not "expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984). Here, because the ALJ found Plaintiff had no functional limitations from her nonsevere impairment of migraine headaches, he reasonably declined to adopt additional RFC restrictions for that impairment.

The ALJ's finding was consistent with Plaintiff's own testimony. Although Plaintiff testified at the second hearing that she got migraines three or four times a week and that at times she would need to lie down in a dark room with a pillow over her head, Tr. 663, the record did not otherwise reflect that Plaintiff reported these symptoms or more significant symptoms to her providers. Other than listing migraine headaches as a "prior diagnosis" and noting her prescription for migraine prevention, the records do not focus on complaints of migraine headaches to treating sources, let alone reference of significant symptoms resulting from such headaches. *See* Tr. 425, 441, 496, 967-968, 973, 976-977 (records in which Plaintiff made no complaints of migraine headaches).[17]

---

[17] As detailed above, Tr. 425 and 441 are records from March 30, 2018 and October 10, 2018 LRMC visits that include no specific complaints of headache. Tr. 496 indicates Plaintiff had no complaints of headache at her June 26, 2019 visit. *See* Tr. 967-968 (May 26, 2021 visit to LRMC lists migraine headache in Plaintiff's history and notes she continues to take Topiramate but

The ALJ appropriately considered Plaintiff's complaints of migraine headaches, appropriately found migraines to be a nonsevere impairment, and appropriately ascribed no functional limitations based on her claims of migraines.[18]

In sum, Plaintiff's allegation of error as to the ALJ's consideration of the record in fashioning her RFC is unavailing. The ALJ's decision is supported by substantial evidence. This allegation of error is dismissed.

### B.    Evaluation of Dr. Meltzer's Opinion

Plaintiff's final allegation of error relates to the ALJ's consideration of the opinion of consulting psychological examiner Morton Meltzer, M.D. Plaintiff submits the ALJ's analysis of Dr. Meltzer's opinion did not comport with applicable regulations. Pl. Mem. 25-27. The Commissioner counters that the ALJ appropriately considered and discounted Dr. Meltzer's opinion in accordance with applicable regulations. Def. Mem. 27-29.

For benefits applications filed on or after March 27, 2017 (such as Plaintiff's), the SSA has enacted substantial revisions to the regulations governing the evaluation of opinion evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, ALJs need not assign an evidentiary weight to medical opinions or give special deference to treating source opinions. 20

---

includes no current complaints of headache); 973 (February 8, 2021 visit to LRMC with no complaints of headache), 976-977 (December 4, 2020 visit to LRMC lists migraine headache in Plaintiff's history and notes she continues to take Topiramate but includes no current complaints of headache).

[18] Plaintiff also briefly claims the RFC found by the ALJ was faulty because of his improper analysis of limitations included in the opinion of Dr. Metzler. Pl. Mem. 23-24. Plaintiff submits that the ALJ should have accepted the decision-making abilities that Dr. Metzler opined Plaintiff would have. *Id.* (citing Tr. at 488). Plaintiff submits those limitations, combined with Plaintiff's testified-to limitations from migraine headaches, required the ALJ to include time-off-task limitations in the RFC. *Id.* The court disagrees. As noted above, the ALJ appropriately addressed Plaintiff's migraine headaches and her testimony regarding same. Dr. Metzler's opinion is discussed below in considering the separate allegation of error Plaintiff includes as to his opinion.

C.F.R. § 404.1520c(a), § 416.920c(a) (providing that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources").[19] Instead, ALJs consider medical opinions using five factors: (1) supportability; (2) consistency; (3) the medical source's relationship with the claimant; (4) the medical source's specialization; and (5) other factors, such as the medical source's familiarity with the other evidence in the claim or understanding of the disability program's policies and evidentiary requirements. 20 C.F.R. § 404.1520c(c), § 416.920c(c). The first two factors, supportability and consistency, are the most important in determining the persuasiveness of a medical source's opinion, and the ALJ is not required to explain the consideration of the other three factors. *Id.* § 404.1520c(b)(2), § 416.920c(b)(2). The new regulations further deem certain evidence "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c), § 416.920b(c). This includes statements on issues reserved to the Commissioner such as whether a claimant is disabled, is unable to work, or is incapable of doing past relevant work. 20 C.F.R. § 404.1520b(c)(3), § 416.920b(c)(3).

### 1.     Dr. Metzler's opinion

On June 15, 2019, Dr. Meltzer met with Plaintiff and provided a consultative psychological examination report. Tr. 485-488 (dictated June 29, 2019, and signed July 8, 2019, Dr. Meltzer's report seems to have been provided at the behest of the North Carolina Department of Health and Human Services, Disability Determination Services Division). Dr. Meltzer's notes

---

[19] The new regulations define a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities to perform the physical, mental, or other demands of work activity or to adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2), § 416.913(a)(2). Those regulations also define a "prior administrative medical finding" as a "finding, other than the ultimate determination about whether [a claimant is] disabled, about a medical issue made by [the SSA's] Federal and State agency medical and psychological consultants at a prior level of review." 20 C.F.R. § 404.1513(a)(5), § 416.913(a)(5).

include information he gathered from Plaintiff, including family, medical, and work history and her activities of daily living. Tr. 485-86. After providing detailed information about Plaintiff's responses to various questions under the "Mental Status" section of the report Dr. Meltzer diagnosed Plaintiff with generalized anxiety disorder and depression secondary to medical issues. Tr. 486-487. Dr. Meltzer ended the report with the following:

> Tolerating the stress and pressure associated with day-to-day work activity, I think given her presentation today, I think she would have a lot of difficulty dealing with situations where she had to make decisions.

Tr. 488.

### 2.    The ALJ's consideration of Dr. Meltzer's opinion

The ALJ found Plaintiff's medically determinable impairments of depression and anxiety "[did] not cause more than minimal limitations in the claimant's ability to perform basic mental work activities[.]" Tr. 639. The ALJ found persuasive the opinions of the state agency reviewing psychological consultants who determined the evidence had not shown a severe mental impairment, Tr. 640 (citing opinions of Drs. Cox and Horsley). He then considered Dr. Meltzer's opinion and found the following:

> In July 2019, [Plaintiff] underwent a psychological consultative examination, which was performed by Morton Meltzer, M.D. Dr. Meltzer opined that [Plaintiff] would have a lot of difficulty dealing with situations where she had to make decisions. Dr. Meltzer's opinion is not persuasive because it is neither well supported nor consistent with the totality of the evidence, which shows [Plaintiff] is able to live independently, maintain a social life, drive, and take her medications independently. Moreover, the claimant has never sought mental health care or counseling.

Tr. 640 (citing ex. 6F, Tr. 484-488).

### 3.    Analysis

Plaintiff ascribes error to the ALJ's analysis, arguing he did not consider the specific factors listed in 20 C.F.R. § 404.1520c, § 416.920c.[20] Plaintiff particularly argues the ALJ's reference to Plaintiff's ADLs in discounting Dr. Meltzer's opinion was inappropriate. Pl. Mem. 25-27.

The court disagrees. While Plaintiff submits it was inappropriate for the ALJ to discuss Plaintiff's daily activities in considering Dr. Meltzer's opinion, it was not. As argued by the Commissioner, applicable regulations provide that the "consistency" of an opinion turns not just on the other medical evidence, but the non-medical evidence as well: "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources *and nonmedical sources* in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2), § 416.920c(c)(2) (emphasis added). Here, the ALJ reasonably determined that Dr. Meltzer's medical opinion regarding Plaintiff's mental limitations (*i.e.,* that Plaintiff had below average intellect, problems with memory, and difficulty making decisions) was inconsistent with evidence that Plaintiff was able to live independently, take her medications (which requires ability to remember and follow instructions), read, drive (which requires considerable concentration and decision-making), and to maintain a social life. Tr. 640.

In addition, the ALJ also found Dr. Meltzer's opinion at odds with Plaintiff's lack of any mental-health treatment. This, combined with Dr. Meltzer's consultant status also indicates the ALJ took into account the treating relationship between Plaintiff and Dr. Meltzer. 20 C.F.R. § 404.1520c(c)(3), § 416.920c(c)(3).

---

[20] As noted above, those factors are listed as: (1) supportability; (2) consistency; (3) relationship of the medical source to the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, and extent of the treatment relationship; (4) specialization; and, (5) other relevant factors. 20 C.F.R. § 404.1520c(c), § 416.920c(c). Section 404.1520(b)(2) and 416.920(b)(2) provide that supportability and consistency are the most important factors.

It is not for this court to determine how it would rule on Plaintiff's claim for disability in the first instance, but rather to determine whether there is substantial evidence to support the ALJ's ruling. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Here, the ALJ reviewed the evidence, explained the reasons for his determination, and the court finds that determination is supported by substantial evidence in the record. "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations. And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations omitted). Accordingly, the court finds that the ALJ's evaluation of the opinion evidence is in keeping with the revised regulations and is supported by substantial evidence.

## IV.     Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court finds that Plaintiff has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. *See Craig,* 76 F.3d at 589; *see also* 42 U.S.C. § 405(g). Therefore, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

March 14, 2024                                          Kaymani D. West
Florence, South Carolina                          United States Magistrate Judge